H. Dickson Burton (4004)
HDBurton@traskbritt.com
Krista Weber Powell (8019)
kwpowell@traskbritt.com
Daniel J. Bezdjian (14597)
DJBezdjian@traskbritt.com
**TRASKBRITT, PC**
230 South 500 East # 300
Salt Lake City, Utah 84102
Telephone: (801) 532-1922
Facsimile: (801) 531-9168

*Attorneys for Plaintiff, EK EKCESSORIES, INC.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| EK EKCESSORIES, INC., a Utah corporation, <br><br> Plaintiff, <br><br> v. <br><br> WOLF PEAK INTERNATIONAL, INC., a Utah corporation, dba as EDGE SAFETY EYEWEAR and EDGE EYEWEAR <br><br> Defendant. | **COMPLAINT** <br><br> **Case No.: 1:17cv00121-DAK** <br><br><br> **JURY DEMAND** |

Plaintiff EK Ekcessories, Inc. ("EK") hereby complains and alleges against Defendant

Wolf Peak International, Inc. ("Wolf Peak" or "Defendant"), doing business as "Edge Safety

Eyewear" and "Edge Eyewear," as follows:

## PARTIES

1.      Plaintiff EK is a Utah corporation with a principal place of business at 575 West

3200 South, Nibley, Utah  84321.

2.      Upon information and belief, Defendant Wolf Peak is a Utah corporation with a principal place of business at 1221 W Marshall Way, Layton, Utah  84041.

## NATURE OF THE ACTION

3.      This is an action for trade dress infringement, trademark infringement, false designation of origin and unfair competition arising under the laws of the United States, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. § 1114 and § 1125(a), for common law trademark infringement, for unfair competition arising under Utah Code Ann. § 13-5(a)-103, and for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271 and/or 35 U.S.C. § 289.

4.      On information and belief, Defendant has copied, infringed, and continues to infringe the trade dress associated with several of EK's products, including at least lanyards, eyewear retainers, and key retainers.

5.      On information and belief, Defendant has infringed and continues to infringe EK's federal and common law trade mark rights associated with several of EK's products, including at least lanyards, eyewear retainers, and key retainers.

6.      On information and belief, Defendant has infringed and continues to infringe, and/or actively induces others to infringe EK's U.S. Patent 6,709,100 (the "'100 Patent") (hereinafter "the Asserted Patent").

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the State law claims asserted because these claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

9.     This Court has personal jurisdiction over Defendant Wolf Peak because Defendant is incorporated in the State of Utah and has its principal place of business within this judicial district.  Further, on information and belief, Wolf Peak does and has done substantial business in this judicial District, including: (i) committing acts of trade dress infringement; (ii) regularly conducting business in this State and judicial District; (iii) directing advertising to or soliciting business from persons residing in this State and judicial District; (iv) committing acts of patent infringement; and (v) engaging in other persistent courses of conduct, and/or deriving substantial revenue from infringing products and/or services provided to persons in this District and State.

10.     Further, the injuries complained of occurred in this district, forming another basis for jurisdiction.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because EK and Wolf Peak both reside in this district and a substantial part of the events giving rise to the claims stated herein have occurred in this district.

## EK'S INTELLECTUAL PROPERTY

12.     Plaintiff EK is a leading designer and manufacturer of various high quality outdoor and recreational accessories.  For example, EK designs, develops, manufactures, and markets various high quality accessories including, but not limited to, eyewear retainers, key retainers, lanyards, hat retainers, belts, pet leashes, tool leashes, ID card holders, watchbands,

and other related products.  As a result of its significant investment and marketing, EK has developed products and a trade dress that have come to be known and recognized by consumers as originating from EK.

13.     For over 30 years, EK has used a unique and readily identifiable combination of trade dress features in its products, such as eyewear retainers, key retainers, lanyards, hat retainers, belts, pet leashes, tool leashes, ID card holders, watchbands, and other related products (hereinafter, "EK Products") that consumers have come to recognize as being associated with EK.  Among other things, EK's Trade Dress includes the unique trapezoidal shape (wedge shape) and design of EK's sliding chock, the unique trapezoidal shape and design of buckle used in many of EK's accessories, the combination of features in each of EK's products including the combination of the trapezoidally-shaped chock with a flexible cord, and/or the combination of the trapezoidal buckle.  Since at least about 1987, EK Products have included the trapezpoidally-shaped chock.  One side of the trapezoidally-shaped chock includes EK's registered trademark of an image of a cat head portion with an open mouth and visible teeth.  The letters EK are located above the cat head.  The other side of the trapezoidally-shaped chock may include the letters "EK" in large print, with the word "EKCESSORIES" in smaller print located below the "EK".  The flexible cord may include a plastic or rubber retaining member on the ends of the flexible cord and/or the middle of the flexible cord.  Several of the EK Products also include the trapezoidally-shaped buckle.  One face of the trapezoidally-shaped buckle may include EK's registered "EK USA" trademark, an EK mark, and/or EK's trademarked logo.  Each face of the female portion of the buckle includes a raised portion with a trapezoidal shape.  One side of the

buckle is attached to a braided loop and the other side of the buckle is attached to another braided loop.

14.     As a result of its innovative and distinctive design, the EK products were an instant success and immediately became uniquely associated with EK as its source.

**EK Trade Dress**

15.     EK manufactures many lanyards, key retainers, ID badge holders, and eyewear retainers that include the trapezoidally-shaped chock in combination with a flexible cord.  The flexible cord includes attached retaining members for connecting ends of the flexible cord together and/or connecting the flexible cord to another article.  One side of the trapezoidal chock includes an image of EK's registered trademark of a cat head.  The other side of the trapezoidal chock includes the letters "EK" in large print, with the word "EKCESSORIES" in smaller print located below the "EK".  Non-limiting examples of EK Products that incorporate the trapezoidally-shaped chock are illustrated below.  As shown below, the end result is a product that is distinguished by the overall appearance of the flexible cord with the associated trapezoidally-shaped chock and the retaining members associated with the flexible cord.







16.    In addition to the trapezoidally-shaped chock, EK sells products that include a trapezoidally-shaped buckle.  The shape of the buckle is designed to have a similar shape as the trapezoidally-shaped chock.  The trapezoidally-shaped buckle sometimes includes the registered "EK USA" trademark on one side of the female end of the buckle, as shown below.  Non-limiting examples of EK Products that incorporate the trapezoidally-shaped buckle are illustrated below.  As shown below, the end result is a product that is distinguished by the overall appearance of the tradezoidally-shaped buckle, among other things.



8



17.     Each of the elements of the configuration of the EK Products is distinctive and serves to identify EK as the source of the EK Products.  Moreover, none of these elements is functional.

**Trade Dress at Issue**

18.     The following non-functional design elements of the EK Products comprise the trade dress at issue in this case (hereinafter, "the EK Trade Dress"):

    a.  A trapezoidally-shaped slidable chock alone or in combination with any of the following elements in an accessory;

    b.  A trapezoidally-shaped buckle alone or in combination with any of elements (a) or any of the following elements in an accessory(c) through (e) in an accessory;

9

  c. The flexible cord associated with the trapezoidally-shaped chock on which the chock is configured to slide;

  d. The plastic or rubber material on the ends and/or at the middle of the flexible cord;

  e. The large "EK" letters on at least one side of the chock and/or buckle;

  f. The "EK USA" trademark on at least one side of the chock and/or buckle; and

  g. One or more braided loops attached to one or both ends of the buckle.

19. A non-exhaustive list of EK Products that incorporate the trade dress at issue include lanyards, ID badge holders, eyewear retainers, key retainers.

20. EK's unique chock and/or unique buckle, alone or in combination with one or more of the flexible cord, plastic or rubber material, the EK logo, the "EK USA" trademark, and/or the trapezoidally-shaped buckle create the total visual appearance of EK's goods and the EK Trade Dress.

21. EK has made significant investments of time and money to build, advertise, promote, and otherwise cultivate the appeal of and the goodwill in the EK Trade Dress.

22. Since the time EK Products were introduced into the market, the sales of the EK Products have soared.  Over time, sales of EK Products, including EK Products incorporating EK's Trade Dress, has steadily increased.  Accordingly, EK's Trade Dress has increased EK's share of the lanyard, key retainer, and eyewear retainer accessory industry market and the EK Trade Dress has acquired strong secondary meaning.

10

23.     The EK Trade Dress identifies EK's products as those of EK exclusively and distinguish the EK products from those of its competitors.  The distinctive EK Trade Dress is widely well-known to customers and symbolizes the goodwill that EK has created by offering these products to consumers.

**EK's Trademarks**

24.     Since, about 1986 EK has been active in, and remains active in, the business of production and sales of sports accessories such as lanyards, ID badge holders, eyewear retainers, and key retainers.

25.     Since at least 1999, EK has continuously used the "EK USA" trademark in commerce on sports accessories such as lanyards, ID badge holders, eyewear retainers, and key retainers.

26.     On September 29, 2015, EK filed a trademark application for "EK USA" as a standard character mark.  The trademark registered on June 28, 2016 with U.S. Registration No. 4,986,875 (hereinafter "EK's registered trademark").  The International Class is IC 022 for "Lanyards for holding smart phones and personal electronic device, badges, hats, bottles, keys, tickets, credentials, cards, cameras; all-purpose nylon straps," and IC 009 for "Accessories for smart phones and personal electronic devices, namely, carrying cases for phones; retractable reel leashes to hold smart phones and personal electronic devices."

27.     Since at least about 1986, EK has provided sports accessories to customers in the United States in connection with the stylized "EK" mark, illustrated below:



28.     The EK mark and EK USA mark are consistently used on EK Products including the trapezoidally-shaped chocks and/or the trapezoidally-shaped buckle of the EK Products and is used to identify the source of the EK Products.

29.     EK has developed common law rights in the EK trademark and EK USA mark through its continuous use of the marks. EK has amassed substantial goodwill in its EK trademark and EK USA mark. The mark EK and EK USA mark have been associated with quality sports accessory products.

30.     The EK trademark and EK USA mark are prominently displayed on EK's Products.  EK has extensively used the EK trademark and EK USA mark in the United States in connection with advertising, marketing and promoting its goods and services. EK has made significant efforts to advertise, market and promote EK and EK USA in the United States and, as a result, the marks have become well recognized by consumers as distinctive symbols of EK's goodwill.

**EK's Patent Rights**

31.     EK has protected its innovative designs and innovations through a broad range of intellectual property rights.  Among those rights, is the '100 Patent.  The '100 Patent issued on March 23, 2004 and is titled "Three-way Eyeglasses Retainer."  The '100 Patent remains valid. EK is the owner by assignment of the '100 Patent.  A copy of the '100 Patent is appended hereto as Exhibit A.

32.     The '100 Patent is directed to a retaining member for attaching a retainer cord to a pair of eyeglasses, as recited in the claims thereof.

## DEFENDANT'S INFRINGEMENT

33.     Wolf Peak has sold in the United States, each of the following products, each of which infringes one or more of EK's intellectual property rights: the Basic Lanyard (Product Number 9750), the Accessory Lanyard (Product Number 9751), the Floater Cord (Product Number 9705), the Slider Cable Leash (Product Number 9711), the floating keychain (Product Number 9741), the Double Ring Keychain (Product Number 9740), the Carabiner Keychain (Product Number 9742), (collectively hereinafter, "the Infringing Products.").

34.     On information and belief, Defendant Wolf Peak operates and maintains a website at http://edgeeyewear.com/site_us/ (hereinafter "Wolf Peak's website"), where Wolf Peak's products, including at least the Infringing Products, are marketed and sold to at least U.S. consumers via Wolf Peak's website.

### Infringement of EK's Trade Dress

35.     On information and belief, as early as May 9, 2013, Defendant Wolf Peak contacted EK to determine pricing for two EK Products.  According to communications from Wolf Peak, Defendant intended to private label various products from EK.  In particular, at least on June 9, 2013, Defendant Wolf Peak requested private labeling of neoprene leashes and snap back leashes configured to break away in the middle.  EK followed up with Defendant Wolf Peak on March 31, 2014 to gauge interest in working together, at which point Defendant indicated that Defendant no longer desired to work with EK.

36.     On information and belief, in at least early 2017, Defendant Wolf Peak began marketing and selling the Infringing Products that are confusingly similar to the EK Products.

37.     For example, on information and belief, Defendant manufactures and sells lanyards, such as the Basic Lanyard (Product Number 9750), shown below, which includes a flexible cord and a trapezoidally-shaped chock, with a large "E" printed on each side of the chock.  The middle of the flexible cord includes a plastic type retaining member that includes two pieces configured to attach to each other.  A braided loop is attached to the flexible cord and attaches the cord to a buckle.  The buckle, in turn, is attached to another braided loop, which connects the buckle to a clip.



38.     On information and belief, Defendant manufactures and sells a series of lanyards, such as the Accessory Lanyard (Product Number 9751), shown below, which includes a flexible cord and a trapezoidally-shaped chock.  The middle of the flexible cord includes a plastic type retaining member that includes two pieces configured to attach to each other.  A braided loop is attached to the flexible cord and attaches the flexible cord to two buckles.  One of the buckles is

attached to a clip though another braided loop and the other of the buckles is attached to a loop of cord through another braided loop.



39.     On information and belief, Defendant manufactures and sells a series of keychains, such as the Floating Keychain (Product Number 9741), shown below, which includes a trapezoidally-shaped chock attached to a cord.



40.     On information and belief, Defendant manufactures and sells a series of keychains, such as the Double Ring Keychain (Product Number 9740), shown below, which includes two trapezoidally-shaped buckles, each end of which is attached to a braided loop.



41.     On information and belief, Defendant manufactures and sells a series of keychains, such as the Carabiner Keychain (Product Number 9742), shown below, which includes a trapezoidally-shaped buckle, each end of which is attached to a braided loop.



42.     Defendant is infringing EK's Trade Dress and has copied the EK Products in order to confuse consumers, trade on EK's goodwill and to gain the business at the expense of EK.

43.     Defendant's conduct and the resulting consumer confusion has resulted in loss of sales and damage to EK's goodwill and reputation.

44.     On information and belief, Defendant Wolf Peak knows, should know, or is willfully blind to the fact that the Infringing Products infringe EK's Trade Dress.

**Infringement of EK's Trademarks**

45.     In addition to copying EK's Trade Dress, Wolf Peak has also copies EK's trademark in which EK has common law rights, as shown below:

16

EK Trademark                              Wolf Peak Label

                      

46.     The "E" label on the Wolf Peak products includes a flared ends that gives the

appearance of a K connected to the E, an attempt to confuse consumers into believing that the

Wolf Peak products with such labeling originated from EK.

47.     Wolf Peak's adoption of the "E" label with flared ends that slavishly copies EK's

trademark rights and is likely to cause confusion or mistake, or to deceive consumers,

purchasers, and other into thinking that Wolf Peak products are EK products, or that they are

sponsored by or affiliated with EK.

48.     On information and belief, Wolf Peak's marketing has played up the similarities

between its products and the EK Products.

49.     Defendant is infringing EK's trademark and has copied the EK trademark in order

to confuse consumers, trade on EK's goodwill and to gain the business at the expense of EK.

50.     Defendant's conduct and the resulting consumer confusion has resulted in loss of

sales and damage to EK's goodwill and reputation.

51.     On information and belief, Defendant Wolf Peak knows, should know, or is

willfully blind to the fact that the Infringing Products infringe EK's trademark.

52.     In addition to copying EK's Trade Dress and common law trademark rights, Wolf

Peak has also copied EK's registered trademark, as shown below:

EK Registered Trademark                    Wolf Peak Label

                

53.     The EK Registered Trademark and the Wolf Peak Label as used in commerce are confusingly similar.  As such, Wolf Peak's use of the Wolf Peak Label is likely to cause confusion to consumers as to the source of the Infringing Products.

54.     Defendant is infringing EK's Registered Trademark and has copied EK's Registered Trademark in order to confuse consumers, trade on EK's goodwill and to gain the business at the expense of EK.

55.     Defendant's conduct and the resulting consumer confusion has resulted in loss of sales and damage to EK's goodwill and reputation.

56.     On information and belief, Defendant Wolf Peak knows, should know, or is willfully blind to the fact that the Infringing Products infringe EK's Registered Trademark.

**Infringement of the '100 Patent**

57.     In addition to its Trade Dress, EK has sought protection for its innovations, which has resulted in numerous issued patents, including the Asserted Patent.

58.     On information and belief, Defendant manufactures and sells a series of eyewear retainers and lanyards that include three-way eyewear retainers, including at least the "Slider Cable Leash," shown below.



True and correct copies of pages from Wolf Peak's (dba Edge Eyewear) website are contained in Exhibit B, attached hereto.

59.     On information and belief, Defendant Wolf Peak knows, should know, or is willfully blind to the fact that the Infringing Products infringe the claims of the Asserted Patent.

## <u>COUNT ONE</u>

**(Trade Dress Infringement, False Designation of Origin – Lanham Act Section 43(a); 15 U.S.C. § 1125(a))**

60.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

61.     EK is the owner of all right and title to the distinctive EK Products and EK Trade Dress.  The EK Trade Dress, as embodied in the EK Products, has acquired secondary meaning, and is not functional.

62.     In addition, based on extensive and consistent advertising and marketing efforts, promotion and sales throughout the United States, the EK Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying EK as the source of these EK Products.

63.     EK's extensive promotion of the distinctive EK Trade Dress has resulted in EK's acquisition of valuable, legally protected rights in the EK Trade Dress as well as considerable consumer goodwill.

64.     EK's Trade Dress has acquired secondary meaning as a result of EK's extensive use, advertising, and sales across the United States, including on the Internet long prior to Defendant's use.

65.     The Trade Dress of the EK Products serves a source-identifying role.

66.     The Trade Dress of the EK Products is non-functional.

67.     The Infringing Products have misappropriated the EK Trade Dress by mimicking a combination of several elements of the EK Trade Dress.

68.     Defendant's unauthorized use of confusingly similar imitations of the EK Products is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's commercial activities, including its promotional activities and advertisements accessible through Defendant's stores, website, and other media content, are associated or connected with EK, or have the sponsorship, endorsement, or approval of EK.

69.     Wolf Peak's manufacture and distribution of the Infringing Products with product design features that mimic a combination of several elements of the EK Trade Dress enables Wolf Peak to benefit unfairly from EK's reputation and success, thereby giving Wolf Peak's Infringing Products sales and commercial value they would not have otherwise.

70.     Defendant's activities and infringing products violate 15 U.S.C. § 1125(a), and unless enjoined by this Court, Defendant's activities have caused or will cause a likelihood of confusion and deception to members of the trade and public and, additionally, injury to EK's goodwill and reputations as symbolized by EK's Trade Dress, for which EK has no adequate remedy at law.

71.     Defendant's actions demonstrate an intentional, willful, and malicious intent to infringe EK's Trade Dress, to the great and irreparable injury of EK.

72.     Defendant knew of EK's Trade Dress when it designed the Infringing Products, as evidenced by email communications from representatives of Defendant.  Accordingly, Defendant's infringement has been, and continues to be, intentional, willful, and without regard to EK's Trade Dress.

73.     Defendant's conduct is likely to cause substantial injury to the public and to EK. Defendant's conduct will continue to damage EK's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is preliminarily and permanently enjoined by this Court.  Accordingly, pursuant to 15 U.S.C. §§ 1116, 1117, and 1125(a), EK is entitled to injunctive relief, costs, damages, and Defendant's profits.  In light of the egregious and exceptional nature of Defendant's conduct, EK is further entitled to reasonable attorneys' fees, trebling of any damages awards, and enhancement of any award of Defendant's profits.

21

## COUNT TWO

### (Common Law Trade Dress Infringement)

74.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

75.     EK has prior rights in EK's Trade Dress based, at least on its prior and continuous use of the EK Trade Dress throughout the United States.

76.     EK used the EK Trade Dress long before Defendant's first use of the confusingly similar Infringing Products.

77.     Wolf Peak's use of EK's Trade Dress enables Wolf Peak to benefit unfairly from EK's reputation and success, thereby giving Wolf Peak's Infringing Products sales and commercial value that would not have otherwise.

78.     Prior to Wolf Peak's first use of the infringing trade dress, Wolf Peak was aware of EK's business and the EK Trade Dress.

79.     Wolf Peak's unauthorized use of the EK Trade Dress is likely, if not certain, to device or cause confusion or mistake among consumers as to the origin, sponsorship, or approval of the Infringing Products and/or cause confusion or mistake as to any affiliation, connection, or association between EK and Wolf Peak.

80.     EK is informed and believes, and on that basis alleges, that Wolf Peak's infringement of the EK Trade Dress has been and continues to be intentional, willful, and without regard to EK's rights.

81.     EK is informed and believes, and on that basis alleges, that Wolf Peak has gained profits by virtues of its infringement of the EK Trade Dress.

82.    EK will suffer and is suffering irreparable harm from Wolf Peak's infringement of the EK Trade Dress insofar as EK's goodwill is being eroded by Wolf Peak's continuing infringement.  EK has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers, and goodwill flowing from the Wolf Peak's infringing activities.  EK is entitled to an injunction against Wolf Peak's continuing infringement of EK's Trade Dress.  Unless enjoined, Wolf Peak will continue its infringing conduct.

## COUNT THREE

### (Common Law Trademark Infringement)

83.    Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

84.    Beginning at least as early as about 1986, EK developed common law rights in the EK trademark for use with at least sports accessories.

85.    Beginning at least as early as about 1997, EK developed common law rights in the EK USA mark for use with at least lanyards for holding smart phones and personal electronic devices, badges, hats, bottles, keys, tickets, credentials, cards, cameras, and for all-purpose nylon straps.

86.    Wolf Peak's use of the stylized "E" is confusingly similar to EK's common law EK trademark and to the EK USA mark, and is likely to cause confusion as to the source of the goods.  The Infringing Products have infringed EK's stylized trademark and the EK USA mark by using identical or similar marks in the Infringing Products.

87.     Wolf Peak's use of the infringing EK trademark and the EK USA mark enables Wolf Peak to benefit unfairly from EK's reputation and success, thereby giving Wolf Peak's Infringing Products sales and commercial value that would not have otherwise.

88.     Prior to Wolf Peak's first use of the Infringing Products, Wolf Peak was aware of EK's business and had either actual notice and knowledge, or constructive notice of EKs trademark.

89.     Wolf Peak's unauthorized use of the infringing EK mark and the EK USA mark is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship, or approval of the Infringing Products and/or to cause confusion or mistake as to any affiliation, connection, or association between EK and Wolf Peak.

90.     EK is informed and believes, and on that basis alleges, that Wolf Peak's infringement of EK's stylized mark and the EK USA mark as described herein has been and continues to be intentional, willful, and without regard to EK's rights therein.

91.     EK is informed and believes, and on that basis alleges, that Wolf Peak has gained profits by virtue of its infringement of EK's stylized mark.

92.     EK will suffer and is suffering irreparable harm from Wolf Peak's infringement of the stylized EK trademark and the EK USA mark insofar as EK's invaluable goodwill is being eroded by Wolf Peak's continuing infringement.  EK has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers, and goodwill flowing from Wolf Peak's infringing activities.  EK is entitled to a preliminary and permanent injunction against Wolf Peak's continuing infringement of EK's stylized trademark.  Unless enjoined, Wolf Peak will continue its infringing conduct.

24

93.     Because Wolf Peak's actions have been committed with intent to damage EK and to confuse and deceive the public, EK is entitled to treble its actual damages or Wolf Peak's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b).

## COUNT FOUR

### (Federal Trademark Infringement – 15 U.S.C. § 1114)

94.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

95.     EK owns the "EK USA" federal trademark for  goods that includes "Lanyards for holding smart phones and personal electronic device, badges, hats, bottles, keys, tickets, credentials, cards, cameras; [and] all-purpose nylon straps".

96.     Wolf Peak's use of the stylized "E" is confusingly similar to EK's Registered Trademark.

97.     Wolf Peak's use of its infringing marks on the Infringing Products is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Wolf Peak with EK, or as to the origin, sponsorship, or approval by EK of Wolf Peak's Infringing Products.

98.     Wolf Peak's use of the Infringing Products enables Wolf Peak to benefit unfairly from EK's reputation and success, thereby giving Wolf Peak's Infringing Products sales and commercial value they would not have otherwise.

99.     Prior to Wolf Peak's first use of the Infringing Products, Wolf Peak was aware of EK's business and had either actual notice and knowledge, or constructive notice of, EK's Registered Trademark.

100.     Wolf Peak's unauthorized use of the Infringing Products is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship, or approval of the Infringing Products and/or to cause confusion or mistake as to any affiliation, connection, or association between EK and Wolf Peak, in violation of 15 U.S.C. § 1114(a).

101.     EK is informed and believes, and on that basis alleges, that Wolf Peak's infringement of EK's Registered Trademark as described herein has been and continues to be intentional, willful, and without regard to EK's rights.

102.     EK is informed and believes, and on that basis alleges, that Wolf Peak has gained profits by virtue of its infringement of EK's Registered Trademark.

103.     EK will suffer and is suffering irreparable harm from Wolf Peak's infringement of EK's Registered Trademark insofar as EK's invaluable goodwill is being eroded by Wolf Peak's continuing infringement.  EK has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers, and goowill flowing from Wolf Peak's infringing activities.  Pursuant to 15 U.S.C. § 1116, EK is entitled to an injunction against Wolf Peak's continuing infringement of EK's Registered Trademark. Unless enjoined, Wolf Peak will continue its infringing conduct.

104.     Because Wolf Peak's actions have been committed with intent to damage EK and to confuse and deceive the public, EK is entitled to treble its actual damages or Wolf Peak's

26

profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a) and 1117(b).

## COUNT FIVE

### (Unfair Competition)

105.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

106.     EK is the owner of valuable trade dress rights, including the EK Trade Dress and the stylized EK trademark.

107.     EK is informed and believes that Defendant has engaged in unlawful, unfair, and/or fraudulent activities, namely unlawful infringement of the EK Trade Dress and the stylized EK trademark.

108.     Defendant's infringement of EK's Trade Dress has resulted in the material diminution in the value of EK's Trade Dress and the stylized EK trademark.

109.     Pursuant to Utah Code Ann. § 13-5(a)-103, EK is entitled to actual damages, its costs and attorneys' fees, and punitive damages.

110.     EK will suffer and is suffering irreparable harm from Wolf Peak's conduct insofar as EK's goodwill is being eroded by Wolf Peak's continuing infringement.  EK has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers, and goodwill flowing from the Wolf Peak's infringing activities.  EK is entitled to an injunction against Wolf Peak's continuing infringement of EK's Trade Dress and the stylized EK trademark.  Unless enjoined, Wolf Peak will continue its infringing conduct.

## COUNT SIX

**(Infringement Of The '100 Patent Against Defendant – 35 U.S.C. §§ 271 *et seq.*)**

111.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

112.     On information and belief, Defendant has had actual notice of the '100 Patent and/or constructive notice of the '100 Patent pursuant to 35 U.S.C. § 287.

113.     On information and belief, Defendant has infringed and continues to infringe at least claim 1 of the '100 Patent by developing, making, using, offering to sell, selling, and/or importing, in this District and elsewhere in the United States, infringing eyewear retainers, such as the Slider Cable Leash.

114.     Defendant's actions constitute infringement, either literal or under the doctrine of equivalents, and/or active inducement of at least claim 1 of the '100 Patent in violation of 35 U.S.C. § 271.

115.     For example, at least the Slider Cable Leash comprises a retaining member for attaching a retainer cord to a pair of eyeglasses.  The retaining member comprises an elongate member made from an elastic material that defines a hollow channel and includes a first opening, a first port, and a second port, as recited in each of independent claim 1 of the '100 Patent.  A true and correct copy of the '100 Patent is appended hereto as Exhibit A.

116.     Defendant infringes at least claim 11 of the '100 Patent by making, using, offering to sell, selling, and/or importing at least the Slider Cable Leash.  For example, the Slider Cable Leash comprises an eyewear retainer comprising a retaining cord and a hollow, elongate

member having a first opening, a first port, and a second port, as recited in claim 11.  A true and

correct copy of the '100 Patent is appended hereto as Exhibit A.

117.    EK has sustained damages and will continue to sustain damages as a result of

Defendant's aforesaid acts of infringement.

118.    EK is entitled to recover damages sustained as a result of Defendant's wrongful

acts in an amount to be proven at trial.

119.    Defendant's infringement of EK's rights under at least claim 1 and claim 11 of the

'100 Patent will continue to damage EK's business, causing irreparable harm, for which there is

no adequate remedy at law, unless it is preliminarily and permanently enjoined by this Court.

120.    Upon information and belief, Defendant has willfully infringed at least claim 1

and claim 11 of the '100 Patent, entitling EK to increased damages under 35 U.S.C. § 284 and to

attorneys fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff EK asks this Court to enter judgment in its favor and against

Defendant under at least 15 U.S.C. § 1114 and § 1125(a), the common law, and/or  under 35

U.S.C. § 281, and grant the following relief:

A.      An adjudication that Defendant has committed acts of unfair competition and

false designation of origin in violation of 15 U.S.C. § 1125(a), common law trade dress

infringement, common law trademark infringement, trademark infringement under 15 U.S.C. §

1114, and/or acts of unfair competition under Utah common law and Utah Code Ann. § 13-5(a)-

103;

B.      For judgment that Defendant has infringed EK's Trade Dress in violation of the
Lanham Act and the common law;

C.      For judgment that Defendant has infringed EK's Registered Trademark in
violation of 15 U.S.C. § 1114;

D.      An adjudication that Defendant's acts of trade dress infringement are willful;

E.      An adjudication that Defendant's acts of trademark infringement are willful;

F.      Orders of this Court preliminarily and permanently enjoining Defendant, its
agents, servants, and any and all parties acting in concert with Defendant, from use of any trade
dress, or to identify Defendant or its goods and services that is confusingly similar to any of
EK's trade dress;

G.      Orders of this Court preliminarily and permanently enjoining Defendant, its
agents, servants, and any and all parties acting in concert with Defendant, from use of any mark,
or to identify Defendant or its goods and services that is confusingly similar to any of EK's
Registered Trademark;

H.      An accounting of Defendant's profits and an assessment of EK's damages to
compensate EK for Defendant's infringement of EK's Trade Dress;

I.      An accounting of Defendant's profits and an assessment of EK's damages to
compensate EK for Defendant's infringement of EK's Registered Trademark;

J.      For judgment that Defendant has infringed EK's stylized trademark in violation of
the common law;

K.      Orders of this Court preliminarily and permanently enjoining Defendant, its
agents, servants, and any and all parties acting in concert with Defendant, from use of any mark,

or to identify Defendant or its goods and services that is confusingly similar to EK's stylized trademark;

L.      An accounting of Defendant's profits and an assessment of EK's damages to compensate EK for Defendant's infringement of EK's stylized trademark;

M.      An award of the amount by which Defendant has been unjustly enriched by confused consumers who have purchased Defendant's products and services under the belief that they were purchasing EK's products and services;

N.      An assessment of treble damages against Defendant due to the deliberate, willful, and knowing nature of its infringement of the EK Trade Dress under 15 U.S.C. § 1117(B).

O.      An award to EK of its reasonable attorneys' fees under 15 U.S.C. § 1117(b) and Utah Code Ann. § 13-5(a)-103.

P.      An award of punitive damages under Utah common law and Utah Code Ann. § 13-5(a)-103.

Q.      A permanent injunction requiring Defendant, its agents, servants, and any and all parties acting in concert with Defendant, from directly or indirectly infringing in any manner EK's Trade Dress and from unfair competition, including by ceasing all sales and offers for sale of the infringing goods.

R.      An award to EK of its costs in this action plus interest on all monetary damages awarded.

S.      An adjudication that Defendant has infringed and continues to directly and indirectly infringe the Asserted Patent;

T.      An adjudication that Defendant's acts of patent infringement are willful;

U.      Orders of this Court preliminarily and permanently enjoining Defendant, its agents, servants, and any and all parties acting in concert with Defendant, from directly or indirectly infringing in any manner any of the claims of the Asserted Patent pursuant to at least 35 U.S.C. § 283;

V.      An award of damages adequate to compensate EK for Defendant's infringement of the Asserted Patent in an amount to be proven at trial;

W.      A finding that this is an exceptional case and an award of Plaintiff's costs and attorney fees;

X.      A trebling of the damage award to Plaintiff;

Y.      An assessment and award of pre- and post-judgment interest on all damages awarded; and

Z.      Any further relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all claims and all issues properly triable thereby.

Dated: July 18, 2017       **TRASKBRITT, P.C.**


By:  H. Dickson Burton
    H. Dickson Burton
    Krista Weber Powell
    Daniel J. Bezdjian
    230 South 500 East # 300
    Salt Lake City, Utah 84102
    Telephone: (801) 532-1922
    Facsimile: (801) 531-9168

*Attorneys for Plaintiff, EK EKCESSORIES, INC.*